

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 29, 1957.

Dr. James A. Bethea
Executive Director
Board for State Hospitals
  and Special Schools
Austin, Texas.

Dear Dr. Bethea:

OPINION NO. WW-101

Re: Whether or not other
    specific legislation
    is needed in order to
    carry out the purposes
    of Art. II, Sec. 1,
    page 22 of the Senate
    Appropriation Bill con-
    cerning the construction,
    equipping, and furnishing
    of a new Community
    Hospital clinic.

        In your recent request for an opinion which has
been directed to this office, you stated that the proposed
Senate Appropriation Bill for the next biennium provides
an appropriation for the construction, equipping, and
furnishing of a new Community Hospital clinic to be located
in the Dallas or Houston area, and an appropriation for the
operation of its facilities.  You went on to state that a
question has arisen among members of the Board as to whether
or not other specific legislation would be needed in order
to carry on the purpose of this provision of the Appropria-
tion Bill.

        Article II of the proposed Senate Appropriation
Bill relates to State Hospitals and Special Schools.
Article II, Sec. 1, page 22 under the heading of New Con-
struction provides:

            "There is hereby appropriated out of the
        General Revenue Fund for the construction,
        equipping, and furnishing of a new Community
        Hospital clinic not to exceed 60 hospital beds
        to be located in the Dallas or Houston area to
        be used for training, research, and out-patient
        clinic for mental illness the sum of . . ."

        Article 3192, V.C.S., states:

            "There shall be established and maintained
        a Psychopathic Hospital at Galveston to be known

as the Galveston State Psychopathic Hospital, and one at Dallas to be known as the Dallas State Psychopathic Hospital. The Galveston State Psychopathic Hospital shall be a hospital for the treatment of nervous and mental diseases both in the hospital and out patient clinic, and shall be available as a part of the teaching facilities in mental medicine for the State Medical College. The Dallas State Psychopathic Hospital shall be a hospital for the treatment of nervous and mental diseases both in the hospital and in out patient clinic."

Article 3192a, V.C.S., 1925, as amended, is the enacting statute which creates the Dallas Psychopathic Hospital as defined in Article 3192, V.C.S., 1925. It should also be noted that Article 3192b, V.C.S., Acts of 1945, 49th Legislature, transferred the control and management of Galveston State Psychopathic Hospital from the State Board of Control to the Board of Regents of The University of Texas, for use as a teaching facility of the School of Medicine of The University of Texas.

It is our understanding that the Dallas Psychopathic Hospital provided for in Art. 3192a, V.C.S., 1925, as amended, has never been established, and, therefore, since the statutory authorization for the Dallas State Hospital has not been repealed, the same could, at the present time, be established at Dallas, Texas, as a Psychopathic Hospital for the treatment of nervous and mental diseases for both an in and out patient clinic. Such statute constitutes a pre-existing law, and no other specific legislation is needed to carry out the provisions of Article II, Sec. 1, page 22, of the Senate Appropriation Bill for the establishment, operation, and maintenance of such hospital in Dallas, Texas.

Directing our attention to the location of such clinic in an area other than that designated in Art. 3192, V.C.S., no similar statute has been found authorising the establishment of a psychopathic clinic in the Houston area.

Attorney General's Opinion No. V-1190, relates to the authority of the Board for Texas State Hospitals and Special Schools to create and establish a new psychiatric hospital out of funds credited to a special fund known as the State Hospitals and Special Schools Building Fund. In that instance, all funds credited to the said Building Fund were expressly designated for use by the Board for Texas

State Hospitals and Special Schools for the purpose of constructing, repairing, and equipping such buildings as in the opinion of the Board were necessary to the proper care of those committed to such hospitals and special schools. Article 7047c-1, Sec. 3, V.C.S.

The above referred to Opinion held that Article 7047c-1, Section 3, V.C.S., which sets up the State Hospitals and Special Schools Building Fund, was not sufficiently broad in scope to authorize the Board for Texas State Hospitals and Special Schools to create and establish new institutions, in the absence of authorization for the establishment of a particular institution.

It is clear that the appropriation here in question relates solely to the creation of an institution within the jurisdiction of the Board for Texas State Hospitals and Special Schools. The language used in the above referred to Attorney General's Opinion is applicable here insofar as it applies to establishment of the clinic in any method or locality in contravention of the provisions of Art. 3192, V.C.S. It was there stated:

> "Specified acts of the Legislature have authorized the creation and establishment of institutions within the jurisdiction of the Board for Texas State Hospitals and Special Schools. An examination of the acts in question reveals that specific authorization has been deemed necessary in the past. (See Chapters 1, 2, and 3, Titles 51, V.C.S.)"

In our opinion, if statutory authorization is required to create or establish a new institution in an instance where the funds were credited to a Special Fund for construction purposes, then all the stronger statutory authorization is necessary to permit the establishment of a new institution where the construction is provided for only by way of funds designated for that purpose in an Appropriation Bill. In the absence of statutory authorization for the establishment of the particular institution in the Houston area, it is our opinion that such new institution may not be established. We can find no authority or power in the Board for Texas State Hospitals and Special Schools to create or establish such new institution in the Houston area. Articles 693 and 3174b, Vernon's Civil Statutes.

Public officers and governmental and administrative Boards possess only such powers as are expressly con-

ferred upon them by law or may be necessarily implied from the powers so conferred. Bryan v. Sundberg, 5 Tex. 418, 425 (1849); Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660 (1935); Crosthwait v. State, 135 Tex. 119, 138 S.W.2d 1060 (1940).

In answer to your question, we are of the opinion that the appropriation for establishment of a new Community Hospital Clinic contained in the Senate Appropriation Bill does not require additional legislation to authorize the Board to create and establish such new institution, insofar as it provides that the clinic may be located in Dallas,Texas. However, other statutory authorization would be necessary in order to expend the funds in question for a new institution in the Houston area. We find no specific or general statutory authorization giving the Board for Texas State Hospitals and Special Schools the power to create or establish a new institution in the Houston Area.

## SUMMARY

Article 3192, V.C.S., constitutes statutory authorization for the establishment of a Psychopathic Hospital in Dallas, Texas; and, insofar as Article II, Sec. 1, page 22 of the Senate Appropriation Bill relates to the construction, equipping, and furnishing of a new community hospital clinic in Dallas, Texas, no additional legislation is needed; however, legislative authorization will be required to carry out the purposes of Article II, Sec. 1, page 22 of the Senate Appropriation Bill relating to the possible location of the hospital in the Houston area.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *B. H. Timmins Jr.*

B. H. Timmins, Jr.
Assistant

BHT:jl:rh

APPROVED:

OPINION COMMITTEE:

H. Grady Chandler,
            Chairman
Edwin P. Horner
Richard Stone
Arthur Sandlin

REVIEWED FOR THE ATTORNEY GENERAL
By:

   Geo. P. Blackburn